This is the afternoon of 2-09-736 County of Winnebago and Sheriff's of Winnebago County v. Illinois Labor Relations Board at all. On behalf of the Appellant, Mr. Josh Fenson. On behalf of the Athlete, Mr. Gary Bailey and Carl Keeler. Mr. Fenson, you may proceed. Thank you, Mr. Fenson. Good afternoon. May it please the Court, for the record, my name is Josh Fenson and I represent the County of Winnebago and the Sheriff of Winnebago County. This case is here before you on administrative review from an order of the Labor Relations Board certifying the Fraternal Order of Police as the exclusive bargaining agent of all Deputy Sheriffs holding the rank of Sergeant in the Winnebago County Sheriff's Office. Let me just ask you a question. There's a little dispute between you and your opponents about what we really are here for and so I want to clarify. Are you here to ask for a hearing or are you here to ask this Court to consider making a finding that these sergeants should not be part of the union program? I think this Court should make the finding that the sergeants are not properly represented by the union, that they are excluded, that they are statutory supervisors. And I'll tell you the reason why I say that is because there's at least half a dozen cases that have been decided in the last 20 years. On this very point, every one of these cases have been decided on almost the exact same fashion, on the exact same facts. And in this day and age, when we have local units of government and municipalities really struggling financially, to put them through this drill of having to defend these types of proceedings, which the law seems to me to clearly indicate that the sergeants are statutory supervisors on these facts, this record, the evidence is completely uncontradicted, it just seems to me that it's a real waste of government resources, of everybody's resources, to have to go back and have a hearing on something like this when the law at least strikes me to be so clear. And maybe I'm wrong about that, but I look at the facts in the cases that this Court has decided. I mean, there's two cases coming out of this district, one from the 3rd, two from the 1st district, the City of Freeport case from the Supreme Court. But in this case, was a hearing ever held? No, it was not. But in those cases that you've cited to, that you're talking about, hearings have been held, correct? That's correct. So are we perhaps premature in asking us to make a ruling where there has been no hearing? I just don't think that the interests of justice are really served by hearing. I mean, would I be happy to have it sent back for a hearing? I mean, is that a result? Yeah. I mean, we'll accept the hearing if that's the route the Court wants to go. But from the standpoint of, you know, really doing justice, I mean, what rationale really could there be when you've got half a dozen cases that all turn on the same point, and this record is 1,200 pages long, containing all the same evidence, if not more evidence, that is uncontradicted here? There's nothing, I mean, if the Union or the Attorney General's office could really point to something in this record that really raised a question that a hearing officer would really need to determine factually. If you looked at it from my experience in ordinary civil cases, something that would generate a question of fact and summary judgment, if there was a genuine issue of material fact here about the responsibilities of the sergeants and what they do, well, then I would say, okay, absolutely. But I just don't see that in this record. Here, though, the hearing officer basically said, I want some additional documents. The sheriff provided some, but maybe not all, that were requested. Some might have been redacted. There was a position statement about why certain things weren't going to be produced. That was correct, Judge. And then there wasn't a decision whether or not, going back to our civil law, there wasn't a decision on the merits. There was a decision on procedure that since you won't produce this, I'm certified. Is that sort of what happened? What's our standard of review? If it's denial, well, maybe we can. Well, I mean, that's another issue that I suppose we could talk about. I mean, I'm a little puzzled by some of the cases that discuss the standard of review in these cases because my experience is that when you have a set of undisputed facts to be applied to the law, that that triggers a de novo standard, not a mixed question of law and facts. It seems like the primary case law says it's a question of fact and law. Yes, it does. I agree. But in these circumstances, there really wasn't any fact finding to be done. With respect, Justice Hutchinson, to your question, I don't see that the hearing officer made any findings whatsoever. I mean, they asked for some materials. We provided a letter initially, a position statement, and then requested documents, and we provided the documents. There was nothing that issued after that. Within 24 hours of submitting 1,200 pages of material that documented everything that's in every one of the half dozen cases that we've cited and more, they certify the unit. I mean, there seems to me to be a rush to judgment there. I mean, it's almost like a denial of due process. I mean, there was no process. Nobody could possibly read all that material in that period of time anyway. How could they tell us that something was missing or unresponsive when there wasn't even an opportunity or time for the hearing officer to review that material? Well, I thought it was a bit more specific than that. The hearing officer wanted something specific, and if he or she could go through, and I thought it was a woman, if they could go through and not find it there, then I suppose it's how long does it take you to go through 1,200 pages to see if it's there? The hearing officer's letter, after we filed our position statement, said I need documentary evidence that specifically addresses some of these 11 factors that are considered. And as you can see from the index to the record that's provided in the back of our brief, all 1,200 pages are broken down for exactly those things. Written reprimands, the exact oral reprimands documented in writing, hundreds of pages of them, just like what every one of the other cases turned on to show that the sergeants are supervisors. I mean, one category after another, it's all there, and all you get back 24 hours later is an order certifying the unit. You know, that just seems pretty grossly improper to me. The union didn't have the right to introduce any evidence it wished before the hearing officer. As far as I know, yes. I don't see any reason why they couldn't have submitted anything. I think there's nothing precluding that. Do you think Wager or Lislin, they appeared to submit nothing and then appealed just on the record? Yeah, I'm aware of nothing that prevented the union from making a submission or even making an argument. They could have submitted a position statement, I suppose, that would have said, based on what the county has submitted, something's missing. There's a question of fact. You should hold a hearing on it or something of that nature. But there was, you know, there was really, and I guess that's another aspect of it. There's a point we made, I think, in our reply brief where we pointed out that there is a section of the Act which talks about under circumstances where it's so clear cut that a hearing isn't even necessary. Yeah, there's a principle of finality of judgment when you get involved in civil cases. When you get in administrative law cases, you know, the union or one party has an opportunity to present whatever evidence it wishes. Why doesn't the finality of judgment concept apply? I'm not too sure what the access about that, but we'll consider it. Yeah, I think, I mean, as I said, certainly the Court has the power to send it back for a hearing. Yeah, you better get on with your argument because the bell's going to go off and we'll give you a little extra time. Well, the cases, I think, as the Court seems to be well aware, set up an analytical framework. It's very straightforward. It's basically a three-part test. You look initially at whether the work that the sergeant performed is substantially different than the work that the rank and file performs. The record contains the job descriptions of the sergeants, of the detectives, and of the patrol officers. It's apparent that the sergeants conduct a very, play a very managerial role. They take care of operational plans. They assign people. They direct the work. All the types of things that you would expect from a managerial level person, particularly in a paramilitary-style organization where you have a clear chain of command. These are commanding officers, and so you have the rank and file below them. The rank and file's job descriptions clearly involve investigations, arrests, narcotics, routine patrol, duties that are substantially different than what the sergeants themselves do. So that element is satisfied. It's not even contested by the other side, and it's a given in the six cases that I've mentioned. The second part of the test is whether the sergeants have the authority to make decisions or the authority to effectively recommend certain steps that would affect the rank and file. And there's a list of 11 factors. I'm not going to go through them all, but I would tell you that at least four of them are substantially established in this record. There's very strong evidence of the role that the sergeants play in the promotion of the rank and file. They're front and center at the Merit Commission proceedings. We have those proceedings in the record that shows that the sergeants are there testifying, that their evaluations of the rank and file are the primary driver behind whether a patrol officer gets a promotion or not. There's significant evidence that they direct the work. They assign who's on a SWAT team. They assign who handles narcotics. All the types of things, again, that you would expect of a managerial-type employee. There's boatloads of evidence of discipline at all different levels, probably some of the most substantial of which is the evidence involving one incident where a sergeant recommended the suspension of a deputy who engaged in a high-speed chase and then lied to the supervisor about it. The sheriff adopted that in total and makes specific reference to the sergeant's recommendation. It's a clear example of effective recommendation of discipline. And we also have evidence that the sergeants adjust step one grievances in the process. And we've got evidence of them doing both granting grievances and denying grievances, and so that takes care of really the third element, which is that they're exercising independent judgment when they do these things. And really the test for independent judgment turns on that question of whether they are exercising some choice between different avenues of authority that they can take. There seems to be some issue as to the role of the confidential or the person who would handle confidential matters and may handle lower, you know, on the hierarchical scale, the staff and the road people and the white shirts as we were. Yeah, the internal affairs officer position is a sensitive position, and there was an offer made by the county to provide that additional information to the hearing officer because they were concerned about having a protective order in place for that. And a lot of that's confidential information, and it affects people's careers. It's information more specifically, I suppose, that could turn up in a grievance, and therefore that's the kind of information that would set up the conflict that an internal affairs officer would inevitably face. And so for that reason, we offered that information on a protective order redacted basis. And I guess it's another example here of a situation where the hearing officer did not make any response to that whatsoever. I mean, we did provide the descriptions of it, the general orders that are in there that govern precisely what the internal affairs officer does and that person's job description, who they interface with, which is a person who negotiates the labor contract, the back and forth. That's all in there. And so for purposes of this proceeding, I think there was certainly enough sufficient evidence and nothing that really would raise – nothing that the other side is pointing to that would raise a question of fact about that at all. Is there a – when these documents go before the boards, is there a general protection of them? Are they returned to the parties? Is there a prohibition of copies being made? I mean, why is it a problem if they would have had the unredacted documents? I don't know the answer to that question, Judge. I'm sorry. It appears one of the county's arguments is that we're not given the opportunity to provide sufficient evidence at the hearing. How do you answer that question? I'm sorry. I didn't quite hear your question, Judge. The union argues that they weren't given sufficient time to produce evidence. The union was not? Yeah. That's one of their arguments, I believe. Well, I think – wasn't it more the union said there wasn't any reason to provide information? And they didn't. Well, I don't know what the answer to that question is, Judge Spalding. The union petitioned for the certification of this unit. You know, I would think if they had something to submit besides the – No, no, no. I know it's that. The union argues it was not given an opportunity to provide evidence regarding style, regarding suchness of authority. I think if there was some concern – I mean, if there was some concern on their part, they certainly could have made some offer of proof. I mean, I suppose nobody knew that the hearing officer was going to rule in 24 hours of our submission. But they certainly had time between the point where the hearing officer told us our position statement wasn't enough and we needed to provide documentary evidence. I mean, at that point, we had already laid out in quite a bit of detail – I think it's about a 12, 15-page letter that explains everything that the documentary evidence in turn supported. And, you know, the gap in time there certainly was more than enough opportunity for the union to make a showing or at least a proffer if they had something to raise that would somehow distinguish the circumstances of this case from the six that have preceded it. Unless the court has other questions, you know, I think we're pretty clear what our position is. No. Nothing. Thank you.  Thank you. I understand you're going to split your time. Yes, sir. All right. You have 15 minutes, so split it as you may. Thank you. As you wish. Good afternoon. May it please the Court, I'm Gary Bailey, an attorney with the Illinois Fraternal and Police Labor Council and the union that petitioned this particular case. We petitioned, of course, under the Illinois Public Labor Relations Act, and I want to make clear about a couple of things in the Act, which I don't know is abundantly clear from its face, is that while the Act does say that supervisors can be excluded from the bargaining unit, it also provides that supervisors can be included into a bargaining unit under two circumstances. They're not present here, but I want to make it very clear that the inclusion of a supervisor into a union is not something that this Act prohibits completely. The law says that if an employer agrees to have a unit of supervisors, you can have one. It also says if you were bargaining as a supervisor prior to the passage of the Act, which is 1984, you will remain one, even though you might meet the definition of supervisor. So I want to make clear, as this argument starts, this idea that if a supervisor is in a union, we've met Armageddon, that supervisors are in unions and police unions across the state of Illinois. But in general, in general, when the sheriff or the chief of police comes in and says, we don't want our sergeants in there, more often than not, maybe it's almost always, they've been excluded. No, not at all. I disagree with counsel. It says there's about a dozen cases. There's about three dozen cases about supervisors, when they're included, when they're not excluded. But when that first moment is made when they say, I object, like in this case, the judge says, give me your reasons why. And they did submit a 12-, 15-page letter, and the judge read that and said, well, you know, strike one, you didn't tell me what I need to know. And asked for very specific and clear definitions of what she wanted thereafter. Because the question is, is just objecting to it, and plenty of lawyers say, I don't want a union. That's why I object. Well, you have to give me the statutory definition. And while they recited the law in the first letter, the judge was very clear, I want some facts. And in this case, with police, there's only three prongs. Substantially different job, one of the indicia, 11, and you've had a judgment. And it's very clear, by reading everything that was submitted thereafter, that the county and sheriff in no time talked about independent judgment. They ignored it. I don't know why. Completely. For example, I think this is the classic one. Quite often the issue of discipline is an issue. In this case, the county submitted copies of disciplinary reprimands or suspensions signed by a sergeant. And said, that is the proof that the sergeants have the authority to issue discipline. Well, that's not the proof. Because what happens at a hearing on the merits of an independent judgment is you will call a sergeant to the stand and say, why did you issue this? And quite often the answer will be, the lieutenant told me to. And in those cases, we find out who has the real independent judgment. The person requesting the reprimand or the person whose signature went on. Well, why isn't there enough then with the reprimand signed by the sergeant to have a hearing? Well, the question is, and the judge in her letter said, I want specific instances of how they have independent judgment. And there was nothing brought forward of, well, how is it that the sergeant is involved in the discipline? Does he just sign a reprimand? Is he involved in the investigation? And the independent judgment by the courts have said you have to make a choice between two clear judgments. In that case, did the sergeant say, should I issue a reprimand? Should I issue a suspension? Should I do nothing? Should I just counsel? There was no evidence whatsoever given to them about the independent judgment thing. And that was, if you will, strike two. I think the reason why we're here today is that this is supposedly, from the ambulance view, this is baseball. We should have been given one more chance to find out what was wrong with our submission, a third chance to rectify it. Do depositions get submitted to accomplish this? No. No, it's simply affidavit. So an affidavit by all of the sergeants saying, I issued this because I thought I should? No, usually from the employer, it's an affidavit from either the sheriff or a chief deputy or a lieutenant, someone of higher rank, saying, this is what I think the sergeants do, or when I was a sergeant, that's what I did. They're very common. And by the way, just to make it clear about the evidence in the record, there is none by the union, because we did not have an opportunity to submit anything, because once in this process, it is usually that once the employer meets its burden to show it has some facts to bring forward, the board comes to the union and says, do you have any facts to dispute that? Because if not, I'm going to dismiss your petition without a hearing. And so then we have to bring enough evidence to show where the facts are, where the fight is about. As I cited in my brief, the Act, the rules provide three ways a petition gets resolved. One, it gets dismissed without a hearing, because we don't have enough evidence to create an issue or even an issue of law. Or they don't do it. Or then there's a hearing. It's one of three. In this case, they didn't meet their initial burden. And the burden is on them. It perhaps seems, as a lawyer, to think if it's the petition to come forward, we must come forward with something to begin with. The law is very clear, and the appellate decision is very clear. These people are presumed to be employees. But in this case, did the board state that, and I'm quoting the sheriff's other contentions, regarding the sergeant's supervisory status or undertale and given its inability to make out the discipline addition? So they looked at this and they felt that the discipline addition didn't meet it. Therefore, all the other things are not necessary. Well, I guess I'm using that as one of the examples. But in terms of that one particular addition, they brought forth examples of sergeants being involved somehow in discipline but not showing that they were involved in the independent judgment. That was just one portion of it. That's right. For example, let's take the sergeant brought up with the confidential issue, outside the supervisory thing. Confidential does not mean just confidential. It means specific to collective bargaining. The case law is clear on that. You have to show that you're in a confidential situation, not that you obtain confidential information, like an internal affairs officer. There is not one case cited by the county because they can't find one because there is none that says if you're an internal affairs officer, you have to be excluded from a union. Rather, it has to do with confidential information regarding collective bargaining. The ALJ's letter specifically said that. I want to know what kind of confidential information they have with regard to collective bargaining. Will they be involved in collective bargaining? Have they been involved in collective bargaining? Have they left the table? Are they collecting information from the management? Nothing is there. And to us, that's very important, I guess. The point you bring up is that we realize that in this case the board, the union, the board dismissed this without hearing from us. And now the county has to be the fact finder, which we believe is unfair. We believe that if you find that they had enough information to go to hearing, you should remand it back for a hearing to give the union a chance to put on our evidence, which we don't have to again because initially the burden of proof is on the employer. And we're presumed to be employees. What we're asking for is that if you do remand it, you should remand it for that thing you find. If you find you think they had enough to show discipline, please don't remand this back to the board and say you should have been hearing on supervisors and I have to now defend against directing and transferring and adjusting agreements. If they didn't bring that evidence in when they were told by the judge to do so, I hope you uphold that judge's ability to run her caseload and say you didn't do it. If you prove one of the 11 factors clearly that the sergeant has independent ability to make a decision in a category, one of the 11 categories, is that sufficient? Yes, in the caseload. And what we're saying is we didn't have the opportunity yet to stand in front of the board and say, for example, on the discipline issue, let us explain those sergeants and what they did and how they came about it. Because we believe, based on our investigations, that they didn't have any independent judgment in doing that. But that has not had a chance to be before the board yet. When the hearing officer requests certain – the hearing judge requests certain information, is she or he doing that as a result of looking at something and saying I want this or are there specific guidelines that she will ask for and the same language used time and time again? It's pretty much routine language, Judge. It's pretty much I need that kind of information. But the board – I think in the second letter, I show it. I practice with the board. I used to be appointed by that board. They, I think, go beyond the – they assist the parties in front of them. They do – I mean, it's only speculation, but to have the county come forward and say is this enough information? They might have responded to that, but instead they said this is what I'm going to give you and in some instances you see this is only what I'm going to give you. I'm not going to give you other information. Well, how much information did they give? The sheriff supplied 1,200 pages of exhibits to the board. Is that correct? I didn't – And how long was it before the board came back with their ruling? The judge did it the next day. Quick reader, huh? I'll say this. I did find the one affidavit that was in there from the deputy chief, and I was amazed to find out the deputy chief's affidavit had nothing to do with independent judgment, which led me to believe, I'm sure, when the judge saw it. Okay. So you go through the other 1,199 pages because they had the affidavit? Well, I mean, it was in the – I don't know what the judge looked at, obviously. I want to yield the rest of the time. Counselor. Counselor, another question. Here's my last question. Regarding the issue of discipline, if the sergeant has independent authority to make an initial decision regarding discipline, and that goes up to the next party, and the next party is the first telescope part sufficient, if he has independent judgment to make an evaluation, that discipline should be granted? I think actually that is one of the most litigated parts, is the people above that person second-guessing? Do they do an independent investigation? And I think all the case law out there is so factually based, not legally based, that if the review that that person is doing is pretty much a, yeah, okay, signing off on it, I think it looks like the sergeant has the authority. But if it turns out the person above them, they give you the whole file. Let me look through it and let me now tell the person above me what I think of that person's recommendation. And that person's recommendation or judgment now is not as great. And it's fair to say that every police department is different when it comes to that. And every sheriff and every chief's decision-making on how many people he wants involved is different. And that's why these cases are so factual, so factually based. Thank you. Good afternoon, Your Honors. May it please the Court. Assistant Attorney General Carl Elitz with the Labor Relations Board. Your Honors, I heard my opponent mention the word due process here, and I think it's important for us to back up and look at what the statute requires, because I think there's a tendency to think about this as just litigation, and it's not. This is administrative review, and the Act requires certain things. Under the Act, the investigator for the board investigates and makes a decision as to whether there is reasonable cause to believe a question of representation exists. That's the decision that the investigator is trying to make. If she decides that there's not reasonable cause to believe a question of representation exists, then she'll take the evidence and pass it on to the executive director, who will either pass it to the board or make the certification. Here, he made the certification. This is not a case where these cases typically – historically, they have typically gone to hearing when there's been an objection by the employer. But as time has passed, the board has had less and less resources to deal with this. The statute has changed. Now the board has to make a decision in 120 days. This was not one of those cases, but there's a lot of pressure on the board to do these investigations, make these decisions. They don't necessarily have to go to a hearing. They don't necessarily what? Have to go to a hearing. The statute says only when there's reasonable cause to believe a question of representation exists. Now, I would suggest – No, I appreciate that resources are tight. They're tight everywhere in this state. So we're going to limit and cut short a process of somebody's rights, and you're talking due process, so we're going to cut short someone's rights because we're short on money in this state? No, Your Honor, I'm not saying that at all. So what are you suggesting? First of all, the question about due process is I don't believe there's anyone's rights, life, liberty, or property at issue. We have statutory rights, and they have a right to a hearing if there's reasonable cause to believe. That's the question. And I'm not suggesting that the Board's lack of resources should drive the decision. What happened here was the ALJ asked for specific information that the management didn't provide to her, as I think she expected. She said, I'm willing to assume, and she does this in her letter, she was willing to assume that the principal work is different. In the final decision, that wouldn't be there. I mean, she says that for now, I'm assuming that the principal work is different. Tell me about independent judgment. And also, don't just pick one of the 11, all of the 11. Tell me about it with respect to discipline. And they came back with this very long letter. It's single-spaced, six pages, going through all the different factors. Didn't really give her the examples she asked for, and she asked for specific things. Now, did she read the 1,200-volume record and chew on all the questions that were raised in this brief in the 24 hours? I don't think so. But I do think that what she got back said, you know, I've asked them for this. They're not giving it to me. Mr. Bailey points out there's an affidavit buried in that record which, you know, might say I'm the chief and I've given authority to the sheriff's to make the decision. That affidavit's not there. I think at that point she said, you don't have what you need to block this representation. Because, as she also says in that letter, the presumption under the act is that the employees get to choose the unit that they prefer and be represented by who they prefer. It's the exception that's supposed to be when there's a supervisory objection. So the possible disciplinary actions taken, signed by Sergeant A, those are now presumed to be not valid because there's no affidavit attached to them? No, Your Honor. It's just that there's nothing that I saw in there when I went through it that suggested that, as Mr. Bailey says, that they were a discipline that was imposed with independent judgment, which is a whole different question. And that's the thing that the investigator said. Show me independent judgment. Don't give me every example that you can find where a sergeant is disciplined, in quotes, by the way. I mean, there's a difference between statutory discipline and what the officers often do. They perceive it as discipline, but it has to be a certain kind of discipline. It has to be done with independent judgment. That wasn't front and center. So in addition, I'm still trying to figure out what she wanted. If that document is not sufficient, does that document then have to be attended to by an affidavit that says, I observed this conduct, it was on my shift, I made this decision, and the lieutenant didn't tell me to do it? If that were the case, then perhaps the hearing officer would have one example of disciplined independent judgment, not one indicia of authority under the statute, but one example of that. The question for the hearing officer is not whether it happened once. It's what is the authority of this person. And as she says in that letter, I need examples, plural, because that's what the board looks for. They want to see that people do this fairly routinely, not an exceptional case once or twice, but that these officers, the sergeants, really have this real-world authority to do discipline. Discipline is almost always at the heart of these cases, and that's why she focused on discipline. I know Mr. Benson is talking about promotion. I don't know of a case involving promotions by sergeants. There's dozens of cases. He's correct that the six cases that were probably decided in the published decisions at the time the briefs were written happened to go against the sergeants. Sergeants as police, as supervisors, common, common fact pattern. The board has gone both ways. The cases have gone both ways. The cases that get published tend to be the reversals of the board. There's a recent case out of the first district, and I can provide the court with a citation, which goes the other way, City of Broadview. So it's not a situation where all the cases have gone this way. So the suggestion that there should be a decision by the appellate court on this question is not a good one. Are job descriptions provided by the sheriff or the county considered in this pre-hearing process? Yes, although the board has said that job descriptions are the least valuable type of evidence because they're typically drafted by the employer, and the employer wants to try to confine the union to the smallest group it can possibly do. So they often say that, you know, sergeants shall do this, sergeants shall do that. The board wants to know what's going on in the real world. Do the sergeants actually have the independent authority to choose between two or more significant courses of conduct? Oftentimes the board finds that they don't. Does it make a difference that the job descriptions were formulated 20 years before the request for certification as opposed to the week before the request for certification? That's a hypothetical question, Judge, understanding that it is a hypothetical question. I mean, I assume what you're saying is... I think so, because you'd have a 20-year history. Well, they're saying that they're the least valuable because they can be manufactured, so to speak, to show that the union isn't necessary for this group of people. But with a 20-year history, Your Honor, you'd have a great record. And you could say, how many times have your sergeants made this decision and what happened afterwards? Those are the kind of things that go to hearing. Adjustment of grievances. If you read the letter, they say in their letter that in one instance he had substantial input into a grievance process, resolving a grievance. Now, maybe he did, in fact, resolve that particular grievance. But it wasn't when the hearing, not the hearing officer. She wasn't a hearing officer at that point. She was an investigator. But it wasn't what she was looking for. With regard to confidentiality, and I really want to make sure I get this point in, with regard to confidentiality, I don't think the sheriff has any argument here to make at all. The confidentiality exception is about collective bargaining and that process. Internal affairs sergeants know lots of things because they're doing internal affairs work. But they need to be assisting the employer in the collective bargaining or labor management relations. And that's not what they're saying happened here. So it makes perfect sense to me that the investigator didn't give much credence to that. This whole discussion about redacted documents and all that, they cite the test correctly on page 12 of the reply brief. The employee has to have principal activity. Their principal activity has to be in the confidential capacity with regard to bargaining or collective bargaining. So the confidentiality argument, I think, should be a quick one to put aside. The hard question, because it's so factual, is whether the indicia of supervisory status has been met. And, you know, I think really what we have here, it's a hard record to defend because all she says is I don't see it. But I have one question. Your briefs, this is the next question of fact and law. Yeah, the appellate court has found that, Your Honor. And the standard is clearly erroneous? Yes, Your Honor. All right, thank you. Thank you. I want to respond to the procedural issue, and I want to talk a little bit about that question of finality and the standard of review, because there's something that comes out of the union's brief. It's mentioned at page 15 at the bottom of our reply. And I think it may trigger a de novo standard, and I think it resolves this question of finality, because the union cites this provision in the rules and regulations of the Labor Board. Mr. Yeltsin was just talking about procedure, so let's talk about procedure. Because, you know what, it's not like we made a mistake and didn't submit enough, and you hear these parties up here complaining that they didn't get a chance to submit evidence to the board. Well, I think the problem is the board, and it's a legal error that the board appears to have made. Because if you look at this regulation, section 1200.100B7, that the union cites, and we mentioned at page 15 of our reply, it says that where the number of contested employees is determinative of the outcome, the board will impound the showing of interest and will resolve the unit appropriateness and exclusion issues through its hearing processes. Now, here, that's a pretty clear statement of the rule. If we would revamp this back for hearing, also kind of intimated that you would then be limited to the record that you have right now. See, I think the board made a mistake by failing to impound the showing of interest and order a hearing because when you are asking to certify a unit that consists entirely of supervisors, clearly that is outcome determinative. So what happened here is, as a matter of law, the board, by failing to impound the showing of interest and order a hearing and proceeding to decision without having done that, committed an error of law that requires this court to reverse on the basis of the record as it stands right now. That's how I think you get to the point of finality and de novo review, is because of the board's failure to follow this rule that the union has cited that required them to hold a hearing under these circumstances where the unit would consist entirely of excluded supervisory personnel. So you're asking us to reverse? Yes. I think you should reverse the determination as a matter of law and apply a de novo standard of review because the board failed to follow and properly interpret its own rules and regulations which required it to hold a hearing. Its failure to hold that hearing is what deprived us of a proper decision and an opportunity for a hearing and apparently it's what's deprived my opponents of the opportunity. They've been standing here complaining they didn't get a chance to present evidence. And you know what? So where does the blame fall? The blame falls on the board itself, which didn't follow its own rules. And now that we've kind of come to the point where it's a question of law about following what its rules required it to do to empower the showing of interest in having a hearing, having failed to do so, the record is closed. And the only thing in this record is evidence that supports a finding that the sergeants are indeed supervisors and therefore I think you can decide this is a matter of law on a de novo standard and treat that decision as final. And that is an argument that erupts in this case as a result of the union's citation to this rule and regulation and our response to it saying that in our reply brief. So this is fairly before the court. I don't want you to think I'm sandbagging anybody here. But this sometimes seems to become a little clearer as you hear the points made in oral argument. And you know, Mr. Eulitz is making the point we're going to talk about due process and we're going to talk about procedure. Well then let's look at what the board's procedures are supposed to be. And they have a rule and they didn't follow that rule and they closed the record on this basis. So this is the only record that exists. There's no need for another hearing. If the board was going to have a hearing it had to follow that rule and it did not. So I would say it's a matter of law. You reverse on that basis and it's the end of the story in this case. But don't you have to make a decision that these, in order to follow that rule that these, kind of a pre-decision that these people are traditionally supervisors in order to get there? I don't think it has to be. Well, you can certainly look at the cases that have preceded this point. But as Justice Bowman pointed out, it takes only one condition. Now they've argued until they're blue in the face about this disciplinary thing all you want. But there's an awful lot of other factors, probably 8 of the 11 in this record, that it only takes one example. And even if you go back to the discipline thing and they say, well, show us the independent judgment. Where's the independent judgment? We didn't have an affidavit. We don't need an affidavit. If you look at page 4 of our reply brief, all you had to do was compare the fact that we submitted reprimands, disciplinary things that occurred under similar types of circumstances that resulted in different discipline. Which clearly demonstrates that if you're confronting a guy who runs over a tree stump with his squad car and one guy gets discipline and another guy doesn't get discipline for damaging the squad car, then clearly a sergeant is making a judgment call as to who he's going to discipline and who he is. We didn't need affidavits to establish that. But affidavits are traditionally considered evidentiary. Why didn't you submit an affidavit from the chief? I'm sorry, this isn't the chief, this is the sheriff. The sheriff saying? Well, I suppose if we'd done that, they would be standing here telling me that it was self-serving and that they should be subject to cross-examination. Well, we might have had a hearing. But an affidavit is considered evidentiary. But so are the documents. The documents, the thing is, the documents were created in real time. It's probably better evidence. It's not like an affidavit where we're going to manufacture it after the fact because I'm sure the sergeant didn't write an affidavit at the time he imposed the discipline to explain why. What he did is he wrote the discipline. And he wrote discipline in different cases involving the same problems with deputies that resulted in different forms of discipline. That's evidence of independent judgment. And that's all it takes. This court has other questions? Apparently, your time is up, sir. Thank you, Your Honor. At this time, the case has taken 105 minutes. And at this time, the court stands adjourned.